UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BARR,<br><br>Defendants. | Case No.: 1:11-cr-00103 JLT<br><br>ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE<br><br>(Doc. 59) |

Robert Barr moves the Court for an order terminating his supervised release early after having completed six of his required ten years. For the reasons set forth below, the motion is **DENIED**.

**I. Background**

Robert Barr plead guilty to one count of violation of 18 U.S.C. § 2252(a)(2), receiving child pornography, which occurred over a period of about 16 months—from September 2010 through January 2011. (Doc. 1 at 1-2; Doc. 23 at 7, 12-13.) Barr admitted to possessing more than 600 images of child pornography, including images of prepubescent children and/or children under the age of 12, and including images which displayed violent, sadistic and masochistic sexual activity involving child-victims. (Doc. 22 at 2, 3) The Court granted the government's request to dismiss a second count involving similar conduct at sentencing. (Doc. 37 at 24)

At the sentencing hearing, Mr. Barr provided letters of support and reported that he had

been molested as a child and that he had never addressed the harms this caused him despite having engaged in counseling "multiple times" in the past. (Doc. 37 at 11) The government urged the Court to consider the seriousness of the offense and that the Court "be mindful of the fact that these are real kids that are being victimized in the videos and images relevant to this case." *Id.* at 13. The government reminded the Court of "the need to be consistent with other defendants that have passed through this courtroom who have been found guilty of similar types of conduct. To sentence Mr. Barr too highly would be unfair to him. Conversely, to provide him a sentence that was too low would be unfair to everybody else." *Id.*

In a thoughtful analysis the Court observed,

> [L]et me just say at the outset, and I have unfortunately done a number of these cases, as have all the judges in this court. What we have found in general is that every one of these are extraordinary cases. They're extraordinary cases because they generally involve people who have otherwise never had any prior exposure to the court system, no prior criminal history; usually close family ties, community ties, all the support that Mr. Barr has indicated is relatively consistent. So by calling this an extraordinary case, I'm looking at some of the different factors, but I will just say this, and I have said it in other cases: The circumstances are -- are such that no prior criminal history, close family ties, community ties, community involvement are pretty typical. So in terms of sentencing, I do have to consider consistencies.
> As far as the sentencing factors in terms of the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, what the Court looks at are the sentencing guidelines, the obvious statutory factors, and to the extent that they reflect, and they do accurately reflect public policy, actions by Congress, Congress has consistently over the past several years enacted various laws that relate specifically to this type of offense. Congress has found that in this case, it is an extremely serious offense, because although most of the people charged and convicted of this offense merely receive child pornography, it is indeed what fuels that industry. For those of us who have seen the results of that in terms of graphic photos, children as young as -- little girls as young as two years old being sexually abused, certainly all minors being sexually abused, Congress has passed law after law tightening down the requirements of the Court in terms of what the Court can and should do in terms of sentencing.
> All courts, including United States Supreme Court, have found this type of offense to be very serious. Therefore, all branches of government have found this type of offense to be so serious, that it is a matter of priority in terms of the executive and the legislative branches to enact and enforce laws relating to this type of offense.
> It is important when courts sentence in this type of offense to deter both the defendant and others from engaging in this type of conduct.
> In terms of protection of the public from further crimes of the defendant, I doubt very much whether I will ever see Mr. Barr in this court again.
> [¶¶]
> This is a tragic situation for Mr. Barr, his family, his friends. This is also an ongoing tragic situation for the victims of this kind of crime. And the courts are constantly reminded of that as national organizations submit documentation and

> letters from the victims and the victims' families in these cases who are literally scarred for life, being victims of sexual abuse. I'm sure Mr. Barr as much as anyone understands that.
>
> In this case, I find that under the advisory sentencing guidelines, the low end is 97 months. In this case, under 3553(a), I do find that there are certain factors that are separate and apart from those that I see in other cases. Obviously the background of Mr. Barr is significant. I will take that into consideration, and that is set forth at the various paragraphs including under the justification section under paragraph 48.
>
> I recognize in this case, that as far as Mr. Barr's personal background, that this is a first offense. He has admitted culpability. He is remorseful for his actions. He has taken the initiative to voluntarily receive treatment counseling, which has been ongoing.
>
> As the probation office has suggested in paragraph 49 at page 13, there are certain factors that may support a downward variance in this case, and I do find that that would be appropriate in this particular case. I recognize that there is family and community support as there are in most cases. I do find that the family and community support in this case is significant, and in this case, I will take those into consideration . . .

*Id*. at 15-19. The Court sentenced Mr. Barr to 72 months in custody and 120 months of supervised release thereafter. (Doc. 37 at 19) In doing so, the Court varied downward from the low-end guideline range of 97 months and adopted the recommendation of a term of supervised release that was five years less than the term typically agreed to by the government. *Id*. at 14.

Mr. Barr began supervision on September 8, 2017. (Doc. 42 at 1). In November 2019, the probation officer filed a petition charging Mr. Barr with violating his terms of supervised release. (Doc. 42) The original petition outlined three charges including that Mr. Barr had unauthorized contact with children while picking up his daughter at a school bus stop on many occasions, and which resulted in him loitering in a place primarily use by children and having unsupervised contact with children without permission of the probation officer. *Id*. at 2. In addition, the probation officer filed a superseding petition, which added that Barr had been on school property—in the parking lot—without written permission of the school, which was a violation of California Penal Code section 626.81. (Doc. 50)

In January 2020, Mr. Barr admitted the three original charges and requested immediate sentencing. (Doc. 51) The Court granted the government's request to dismiss the fourth charge and sentenced Mr. Barr to no time in custody and continued him on supervised release.[1] (Doc. 52

---

[1] Initially, the Court revoked Mr. Barr's supervised release. (Doc. 52 at 1) However, after realizing that supervised release cannot be revoked without additional incarceration, the Court issued an amended judgment continuing Mr. Barr on supervised release. (Doc. 54 at 2). Though the face of the First Amended

3

at 2) However, the Court placed Mr. Barr on location monitoring for six months. *Id* at 5.

Mr. Barr now argues that being on supervised release make it difficult to support his family. (Doc. 59-4 at 2-3) Due to COVID, he lost the job he held when he was first released from prison, because the government contracts the company held, expired. *Id*. at 2-3. Since that time, he has obtained additional training to allow him to begin "flipping houses" with his father. Id. at 2. However, the corporation formed with his father, has not been able to grow because many banks are unwilling to make a loan to a company where more than 25% is owned by a person on supervision. *Id.* Likewise, an associate who was initially interested in providing Mr. Barr the needed funding, change his mind because after having been advised of Mr. Barr's criminal history by the probation officer, the man's wife became unwilling to be in business with him. *Id*. at 4. Perhaps more difficult, is the fact that increased interest rates have made the house-flipping "impossible." *Id*. Despite this setback, Mr. Barr has once again received additional training to become a home inspector, but he does not yet know whether his being on supervision will impact his ability to obtain work. *Id.* Mr. Barr asserts, "He has treated with a therapist for sex addiction, a family therapist, and regularly attends a sobriety support group. Mr. Barr has learned his lesson and needs this Court's help to close the chapter on a significant mistake, and start a new chapter for the betterment of his family."[2] (Doc. 59 at 3)

The government opposes the motion for early termination of supervision noting that he fails to provide a psychological assessment, detailing whether he demonstrates any continued sexual interest in children or child pornography. (Doc. 61 at 4) Likewise, the government notes that Mr. Barr's performance on supervised release has not been satisfactory in light of his admission to the petition and the need to place him on location monitoring to ensure he complied with terms of supervision. *Id*. The government concludes, "Barr requests a 40 percent reduction in what has not been a fully compliant term of supervised release. Barr's post-violation satisfactory

---

Judgment indicates that Mr. Barr was continued on "the same conditions of supervision heretofore ordered on 7/2/2012," (Doc. 54 at 1), the original terms of supervision did not include location monitoring. (*Compare* Doc. 54 at 1 with Doc. 27 at 4-5)

[2] He argues also that he has been sober for 19 years. (Doc. 59 at 3) Thus, he had already attained sobriety many years before he committed his crime. Consequently, the Court does not find that his sobriety bears on the questions before it.

4

1 performance does not entitle him to early termination. Barr should serve his full ten-year term of
2 supervised release." *Id*.

3 **II. Analysis**

4     The Court acknowledges its discretion to terminate supervision early in this case.  In
5 considering the motion, the Court notes first that the underlying offense was quite serious and
6 dangerous to the most vulnerable of society. Based upon this conduct, though concluding that Mr.
7 Barr should be incarcerated for less than the low-end of the applicable guideline range, the Court
8 concluded that 120 months of supervised release was necessary to protect the public once he was
9 released.

10     Second, after having only served two years on supervised release, Mr. Barr failed to
11 comply with some of the most important terms of supervision—that he not have unsupervised
12 contact with children, not loiter in an area where children gather and not do these things without
13 first receiving permission from the probation officer. The Court has little explanation for Mr.
14 Barr's conduct at that time, though it appreciates that, apparently, this conduct has not recurred.

15     Third, the Court is aware that Mr. Barr has continued in therapy, but it has little
16 information as to the success of that effort or, indeed, how "success" is measured in this case.
17 Despite having engaged in many courses of therapy before 2010, Mr. Barr still committed the
18 crimes at issue. The Court needs something more than an assertion that Mr. Barr "has learned his
19 lesson." Mr. Barr is obviously quite intelligent, given that he has been able to complete several
20 courses of vocational training and started at least one business since leaving prison. Thus, it has
21 little doubt that Mr. Barr knew at the time he committed the crimes that what he was doing was
22 wrong and that actual children were suffering incredible violence and trauma to produce the
23 images he possessed.

24     Finally, despite this, the Court appreciates that Mr. Barr has made significant strides in
25 reentering society and providing for his family. However, the Court must be concerned not only
26 for Mr. Barr's family but also for all of the other families in the community. The showing made
27 by Mr. Barr simply fails to demonstrate that the Court can safely terminate supervision at this
28

time[3]. For these reasons, and after considering all of the § 3583(e)(1) factors, the motion for early termination of supervised release is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 26, 2023**

UNITED STATES DISTRICT JUDGE

---

[3] A psychological evaluation by a qualified therapist, which is backed up by objective evidence, demonstrating that Mr. Barr no longer poses a risk to society, would be strong evidence that Mr. Barr no longer needs supervision.